SIMON, Justice.
 

 Plaintiff, as owner of a building located in the commercial section of Homer, Louisiana, seeks to recover damages allegedly caused to said building by defendant, Belcher and Son, when it was engaged in demolishing a building adjacent to that -of plaintiff’s.
 

 In answer, the defendant denied liability and called the Maryland Casualty Company in warranty, alleging that said insurer had issued a comprehensive insurance policy, insuring defendant against liability in con-nection with its business operations; that under the terms of said policy the insurer agreed to defend all suits for damages
 
 *425
 
 brought against defendant growing out of ■its business operations; but that in spite of amicable demand, the said insurer has failed to join in this litigation, as a result of which defendant, being forced to retain counsel, seeks to recover attorney fees in the sum of $750 against the said insurer.
 

 By supplemental and amended answer and call in warranty, defendant pleads in the alternative that in the event the court should find by virtue of the endorsement that the policy excludes any property damage liability arising from the demolition work done by defendant, then in that event the said endorsement does not express the true intent of the agreement of the parties to the insurance policy and that said policy should be reformed to express the true intent of the parties by deleting the exclusion clause and reforming the contract so as to cover the claim asserted by plaintiff herein.
 

 Exceptions of no cause and no right of action to the call in warranty filed by the insurer were referred to the merits. Whereupon the insurer filed an answer and categorically denied the allegations of plaintiff’s petition; and in answer to the defendant’s call in warranty also categorically denied liability and alleged that the policy issued to the defendant contained an endorsement specifically providing that the coverage afforded therein with respect to the operations of the insured does not apply to damages as the .result of excavating, moving, shoring, underpinning, razing, or demolition of any building or structure or removal or rebuilding of any structural support thereof while such operations were being performed by the named insured.
 

 Upon trial on the merits the trial court rendered judgment in the sum of $2,163 in favor of plaintiff and against the defendant, Belcher and Son. The trial court also entered judgment dismissing the call in warranty, holding that the damage herein was not covered by the policy. Defendant has appealed.
 

 The defendant is a partnership engaged in the general contracting business, including the demolition and erection of buildings. Defendant was employed by the Homer National Bank to remodel its present building, to demolish the one-story masonry structure adjoining same, and to reconstruct a new building thereon. The bank building, the masonry structure to be demolished, and plaintiff’s building had a common easterly front with common party walls.
 

 The front or east wall of plaintiff’s building consisted primarily of a door and of plate glass for the display of merchandise. Three pieces of flat metal, referred to as “I” beams, hooked or welded together, extended horizontally across the width of the building immediately above the display window at an approximate height'of a one-story building. Above and resting .upon the
 
 *427
 
 horizontal “I” beams was a brick wall serving as an ornamental parapet.
 

 Just below this parapet and above the plate glass window, a wooden canopy extended at right angles from the building over the sidewalk and which is shown to have been in place for many years. This canopy weighed about 2000 pounds and was suspended by tension rods running from its outer edge to the parapet. Two metal advertising signs, having a combined weight of approximately 300 pounds, were likewise attached to the parapet. It is further shown that the parapet butted against the front wall of the masonry structure and was connected therewith by means of a small thin piece of metal.
 

 Upon the masonry structure being demolished, the condition of the brick parapet became exposed, showing not only that the parapet had “bowed out” and had separated from the building proper, but also that it was insecurely balanced upon the three “I” beams.
 

 Plaintiff alleges that the demolition of the old masonry structure caused the parapet on her building to crack and to become separated from the building proper, requiring its demolition and the rebuilding of its entire front. It is noted, and the fact is undisputed, that the parapet did not fall or crumble.at any time during the course of or after the demolition work.
 

 Our appreciation of the entire record, including the physical characteristics- of the buildings clearly shown by the photographic evidence, constrains us to conclude that the-contention of the defendant was fully supported by a preponderance of the evidence and that plaintiff has not carried the burden of proving her claim to the certainty required by law.
 

 It is conclusively shown that many years prior to this demolition work, a fire occurred in plaintiff’s building. The smoke and soot had penetrated between the bricks forming the thickness of the parapet and covered the entire crevices therein. It is manifest that had the parapet bowed out and the brick separated from plaintiff’s building at any time after the fire, the crevices would not have been blanketed with smoke and soot. We must necessarily conclude that this bowing out and the crevices existed prior to the fire and were not the result of the demolition work done many years thereafter.
 

 There is evidence that considerable repairs for cracks and leaks had been made on plaintiff’s roof and parapet several years prior to the entrance of defendant on the adjoining building. The top of this parapet was covered with a thin layer of mortar, which served to conceal the burned condition and discoloration thereof caused by the fire. It is significant that this thin veneer of mortar was not cracked after defendant had finished the demolition of the adjoining building, thus conclusively demonstrating to us that had the demolition work
 
 *429
 
 caused -the damage complained of, this thin layer of mortar would have been shaken loose or cracked.
 

 The civil engineer employed by defendant to inspect the premises, including adjoining buildings, prior to the demolition work, testified that at that time he observed with the naked eye the then-existing bow at the top of and in the center of the parapet. At the time of this inspection he also observed the unequal lengths of the chains supporting the two advertising signs attached to the parapet, from which he concluded that the “bowed out” condition of the parapet had existed at the time the signs were attached thereto.
 

 The demolition work exposed the fact that the actual party wall between the two structures, which was originally 13 inches in thickness, had, on plaintiff’s side of the wall, been cut or hollowed out to a depth of slightly more than half of that thickness for a height of approximately 8 feet. We find it conceivable that the “I” beam on which the parapet rested was thus deprived of slightly more than half of its support by the lessening of the thickness of the party wall, and that same was a contributing factor to the bowing out of the parapet long prior to the commencement of work by defendant.
 

 The evidence discloses that when the south end of the parapet wall was exposed it was shown that it was not attached to the wall of plaintiff’s building either on its north end or on its south end, but was simply precariously balanced and, as stated, plaintiff’s parapet was held onto the masonry structure on its south end by a small piece of metal.
 

 We are cognizant of the general law that in matters involving purely issues' of fact the judgment of the lower court should be affirmed unless there be manifest error; however, upon an examination of the record we are convinced and constrained to hold that plaintiff’s old brick parapet was not damaged by any activity of defendant' and its workmen on the adjoining masonry structure, but that the damaged and dangerous condition of said parapet existed prior thereto and was simply exposed thereby.
 

 The remaining questions are: (1) whether defendant is entitled to receive $750 attorney fees as claimed; and (2) whether the insurance policy should be reformed.
 

 ■ Defendant contends that this attorney fee is due because Maryland Casualty Company breached its contract and refused to defend this suit 'as its contract required it to do, and that said refusal compelled defendant to retain its own counsel.
 

 The insurer contends that the coverage claimed by the defendant is specifically excluded in its policy, and therefore no liability whatsoever attaches thereunder.
 

 Needless to say, attorney fees as damages ar.e ordinarily not allowable, and we do not think that this is a case calling
 
 *431
 
 for the imposition of the penalty of attorney fees imposed on the insurance company under the provisions of Act 310 of 1910, LSA-R.S. 22:213,-22:657. The contention of the insurer in the case at bar is not unfounded or unreasonable. An examination of the policy and the endorsement thereon clearly shows that said policy coverage imposes an obligation upon the insurer to defend suits initiated against the insured under its applicable terms and conditions. But this obligation is non-existent when suit is brought against the insured under the specific acts enumerated and made exclusive in the endorsement, which is the case at bar.
 

 Not having borne the burden of proof of his alternative demand in that the policy does not reflect a true intention of the parties thereto, the alternative demand of defendant for a reformation thereof must be held without merit.
 

 It is an established rule of law that in a suit between the parties to a contract, either party is always permitted to correct any error in the instrument purporting to evidence the contract so as to make it express truly and correctly the intention of the parties. However, the error or the mistake must he mutual. The burden is on the one seeking the reformation to prove the error, and he must carry said burden by clear, and the strongest possible proof. See Reynaud v. Bullock, 195 La. 86, 196 So. 29.
 

 Accordingly, for the reasons assigned,, the judgment of the district court is reversed, annulled and set aside; and it is. now ordered, adjudged and decreed that there be judgment herein in favor of defendant Belcher and Son and against plaintiff, Christelle Ferguson, dismissing plaintiff’s suit.
 

 It is further ordered, adjudged and decreed that there be further judgment herein in favor of defendant Maryland Casualty-Company and against the defendant Belcher and Son, dismissing the call in warranty filed herein. All costs to be borne by plain- ' tiff.